# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JORDAN MICKLEVITZ,**

    Plaintiff,

  v.                                                                       Case No. 16-CV-905

**TEHRANGI CHAPMAN, et al.,**

    Defendants.

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Jordan Micklevitz, who is representing himself, filed a lawsuit under 42 U.S.C. § 1983, alleging that defendants violated the Fourth Amendment when they used OC spray to gain his compliance, arrested him, and searched his apartment after arresting him. Defendants move for summary judgment. For the reasons explained below, I will grant the motion and dismiss this case.

## RELEVANT FACTS

Officers Tehrangi Chapman and Matthew Zaworski are members of the Milwaukee Police Department. (ECF No. 40 at ¶¶ 1-2.) On August 20, 2015, they were dispatched to an apartment building on a suspect check. (*Id.* at ¶ 4.) Prior to arriving on the scene, Chapman conducted a wanted check, which revealed that Micklevitz had a valid temporary misdemeanor want for battery/domestic violence. (*Id.* at ¶¶ 6-7.) Defendants explain that a temporary misdemeanor want is an inter-

department warrant, entered into the National Crime Information Center, where probable cause exists to arrest a subject on an active misdemeanor investigation for a 72-hour period. (*Id.* at ¶ 8.) Micklevitz asserts that there was no arrest warrant for him. (ECF No. 51 at ¶ 8.)

After entering the building, the officers went to Micklevitz's apartment and knocked on the door several times, but no one answered. (ECF No. 40 at ¶¶ 10-11.) The officers then covered the peephole, knocked, and identified themselves as maintenance. (*Id.* at ¶ 13.) Micklevitz opened the door slightly and looked at the officers. (*Id.* at ¶ 14.) Zaworski asked Micklevitz if his name was Jordan, to which Micklevitz responded, "Yeah, hold on." (*Id.* at ¶ 15.) Micklevitz then began to close the door. (*Id.* at ¶16.) Micklevitz explains that he was not fully dressed because he had been sleeping. (ECF No. 51 at ¶ 16.)

Officer Zaworski states that he smelled fresh cannabis and that both officers began shouting at Micklevitz to stop pushing the door closed. (ECF No. 40 at ¶ 18.) Chapman placed his foot in the door to keep Micklevitz from closing it, but Micklevitz continued to push on the door. (*Id.* at ¶¶18-19; ECF No. 43-2 at 10.) Micklevitz explains that he was "moving [the door] forward slightly" because his foot had become wedged underneath it after the officers tried to force it open. (ECF No. 51 at ¶ 19.)

Zaworski explains that, to gain control of the situation, he placed the majority of his weight against the door and retrieved his OC spray. (ECF No. 40 at ¶ 21.) Zaworski advised Micklevitz several times that he would spray the OC if he did not stop pushing on the door, but Micklevitz continued to push on the door (again,

2

Micklevitz says he was doing so to free his trapped foot). (*Id.* at ¶ 22; ECF No. 51 at ¶ 22.) Zaworski was able to get a hand around the door and deployed a three-second burst of OC at Micklevitz, but it was ineffective. (ECF No. 40 at ¶¶ 23-24.) Micklevitz continued to struggle, so Zaworski deployed a second three-second burst of OC. (*Id.* at ¶ 24.) Micklevitz then stopped struggling and walked away from the door. (*Id.* at ¶ 25.) The officers were able to gain control of his arms, placed him in handcuffs, and walked him into the hallway where the air was free of OC spray. (*Id.* at ¶¶ 26-27.)

Zaworski conducted a search incident to arrest and found a loaded semi-automatic firearm in Micklevitz's back pocket, for which Micklevitz possessed a valid concealed carry permit. (ECF No. 40 at ¶ 28; ECF No. 51 at ¶ 28.) Zaworski asserts that he conducted a protective sweep to make sure no one else was in the apartment. (ECF No. 41 at ¶ 29.) He says that, during the protective sweep, he saw marijuana and drug paraphernalia, several pill bottles, and multiple firearms and ammunition in plain sight. (*Id.* at ¶ 30.)

On January 14, 2016, Judge Carolina Stark held an evidentiary hearing on Micklevitz's motion to determine the legality of the protective sweep. (ECF No. 41 at ¶ 33-34.) Micklevitz sought to suppress all of the evidence obtained from his apartment. (*Id.*) During the evidentiary hearing, Zaworski testified about what happened during Micklevitz's arrest and the subsequent entries into his apartment. (*Id.* at ¶ 31.) On January 19, 2016, Judge Stark orally ruled that the officers' entry was justified as a protective sweep. (*Id.* at ¶ 34.) About six months later, Micklevitz filed a second motion to suppress, which Judge Stark treated as a motion for

3

reconsideration. (*Id.* at ¶ 36.) She denied the motion a couple weeks later. (*Id.* at ¶ 37.)

Shortly thereafter, Micklevitz plead guilty to one count of THC with intent to deliver and one count of keeping a drug house, both with weapon enhancers. (ECF No. 40 at ¶ 38.) Micklevitz filed a post-conviction motion on March 7, 2017, which was denied on March 27, 2018. (*Id.* at ¶¶ 40-41.) On January 23, 2019, the Court of Appeals affirmed the lower court's decision, and on May 14, 2019, the Wisconsin Supreme Court denied Micklevitz's petition for review. (*Id.* at ¶ 44.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). When considering a motion for summary judgment, the court takes evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

4

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

Micklevitz proceeds on three Fourth Amendment claims: 1) that Chapman and Zaworski unlawfully arrested him; 2) that Chapman and Zaworski used excessive force in the course of effecting that arrest; and 3) that defendants unlawfully searched his apartment following his arrest. (ECF No. 12 at 5.) Defendants assert that Micklevitz's arrest and search claims are barred by *Heck v. Humphrey* and issue preclusion and his excessive force claim fails on the merits. I will address each claim in turn.

1. *Unlawful Arrest Claim*

Micklevitz asserts that, because there was no arrest warrant for him, his arrest was unlawful. Defendants first assert that this claim is barred by *Heck v. Humphrey*, which prohibits "a plaintiff convicted of a crime in state court…[from bringing] a § 1983 claim which, if successful, would imply that his conviction was invalid, unless

5

and until the conviction has been reversed on appeal or otherwise invalidated." *Reynolds v. Jamison*, 488 F.3d 756, 766-67 (7th Cir. 2007) (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)). Defendants are incorrect. The Seventh Circuit has long held that "a claim for false arrest, because it does not by its nature call into question the validity of a conviction, may go forward immediately, without nullification of the underlying criminal conviction." *Id.* (citing *Wallace v. City of Chicago*, 440 F.3d 421, 423 (2006)). Micklevitz's illegal arrest claim is not barred by *Heck*.

Defendants next assert that this claim is barred by issue preclusion, which applies if, among other things, an issue was "actually litigated" in a former proceeding. Courts look to the following factors to consider whether an issue was actually litigated: (1) whether the parties were fully heard; (2) whether the former court's decision was the result of a well-reasoned opinion; (3) whether the decision was subject to appeal, or in fact appealed; and (4) whether the decision was procedurally definite. *Davis v. Schott*, No. 17-cv-1355-jps, 2019 WL 2717207, at *5 (E.D. Wis. June 28, 2019) (citing *Boerner v. LVNV Funding LLC*, 326 F. Supp. 3d 665, 678-79 (E.D. Wis. 2018)).

In support of their argument that this claim is barred by issue preclusion, defendants rely on an oral ruling made by Judge Stark on Micklevitz's motion to suppress. However, this decision undermines their argument that the legality of Micklevitz's arrest was actually litigated. Two different times in her ruling, Judge Stark emphasized that Micklevitz "did not challenge that officers had probable cause to arrest [him]" and that her analysis focused only on the "second entry that law

6

enforcement made to the apartment in question and any evidence resulting from that or connected to that second entry." (ECF No. 43-3 at 2, 8.) Similarly, when the Court of Appeals affirmed Judge Stark's decision, it found only that "the protective sweep was lawful" and did not address the legality of Micklevitz's arrest. Accordingly, I find that Micklevitz's illegal arrest claim is also not barred by issue preclusion.

Still, based on the record, I find that Zaworski and Chapman are entitled to summary judgment on this claim. Probable cause is sufficient for an arrest. *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (a warrantless arrest satisfies the Fourth Amendment when supported by probable cause that the arrested individual committed a crime). Based on the facts that defendants knew at the time, I find that they had probable cause to arrest Micklevitz. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.").

The officers explain that they first contacted Micklevitz based on temporary misdemeanor want in connection with a battery/domestic violence complaint. After Micklevitz opened the door, he confirmed his first name, and officers noted that he matched the description in the want. Further, officers smelled fresh marijuana emanating from the open door. Based on those facts, no jury could reasonably conclude that Zaworski and Chapman lacked probable cause to arrest Micklevitz. As such, they are entitled to summary judgment on this claim. *See Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an absolute

7

defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution.").

   2. *Excessive Force Claim*

Micklevitz also asserts that Zaworski used excessive force while arresting him when he sprayed two, three-second bursts of OC spray in order to gain Micklevitz's compliance. "The force used to effect an arrest must be objectively 'reasonable' under the Fourth Amendment." *Chelios v. Heavener*, 520 F.3d 678, 689 (7th Cir. 2008). "[A]n officer's use of force is unconstitutional if, 'judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *Id.* (quoting *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003)). Based on the record here, no jury could reasonably conclude that Zaworski used excessive force during Micklevitz's arrest.

The parties agree that Zaworski and Chapman repeatedly ordered Micklevitz to open the door and that Micklevitz refused to comply with those orders. Micklevitz asserts that he continued to push on the door only because his foot was trapped and he was trying to free it, but he offers no evidence supporting a conclusion that officers *knew* that was the reason for his non-compliance. The parties also agree that Zaworski gave multiple warnings that, if Micklevitz did not stop pushing on the door, he would use his OC spray. Micklevitz still did not comply, nor did Micklevitz comply after the first three-second burst of OC spray. It was only after the second burst of

8

OC spray that Micklevitz finally stopped pushing on the door. The officers were then able to arrest him without further incident.[1]

Given that the officers had probable cause to arrest Micklevitz, that Micklevitz refused to comply with simple, straightforward orders to stop resisting, and that Zaworski repeatedly warned Micklevitz that he would use OC spray if he did not begin to comply, no jury could reasonably conclude that the minimal force Zaworski used to gain Micklevitz's compliance in order to arrest him was unreasonable.

### 3. Illegal Search Claim

Micklevitz asserts that defendants (including, but not limited to Zaworski and Chapman) entered his apartment multiple times. At the suppression hearing, Judge Stark noted that Micklevitz did not challenge Zaworski and Chapman's initial entry into his apartment, at which time they arrested Micklevitz and then quickly moved him into the hallway where it was easier to breathe. She also ruled that Zaworski's second entry into the apartment, during which he says he did a one-minute protective sweep to ensure no one else was inside, was constitutionally permissible. The Court of Appeals affirmed that ruling. Finally, she noted that Micklevitz did not challenge Zaworski's third entry into the apartment, at which time he got some water for Micklevitz after he said he would like some. (ECF No. 43-3 at 6-8.) Micklevitz

---

[1] Micklevitz asserts that he was later treated for a broken hand, but there is no explanation of how he broke his hand. Without evidence of *how* Micklevitz broke his hand, no jury could reasonably conclude that defendants' actions were responsible for that injury.

9

provides no admissible evidence of additional entries into his apartment prior to officers obtaining a search warrant.[2]

The Fourth Amendment proscribes unreasonable searches and seizures. Among those places that can be searched by the police, one's home is the most sacrosanct, and receives the greatest Fourth Amendment protection. *See Payton v. New York*, 445 U.S. 573, 585 (1980) (quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)) ("[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'"). Law enforcement is prohibited from entering a home or dwelling without a warrant in all but the most exceptional cases. *Id.* at 586. And a warrantless search is presumed "unreasonable" unless the police can show that it falls within one of the carefully defined exceptions. *See Sutterfield v. City of Milwaukee*, 751 F.3d 542, 553 (7th Cir. 2014).

Relevant to Zaworski and Chapman's first entry into Micklevitz's apartment is the "exigent circumstances exception," which applies when "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable. *Riley v. California*, 573 U.S. 373, 402 (2014) (citations and internal quotation marks omitted). "Such exigencies could include the need to prevent the imminent destruction of evidence…." Zaworski explains that they

---

[2] Micklevitz asserts that officers went into his apartment "multiple times," which "can be seen on the photographs, the video and also officer's own testimony." (ECF No. 52 at ¶ 13.) Micklevitz provides no details about who went into his apartment, when they went into his apartment, or under what circumstances they went into his apartment. Although he attaches more than 300 pages of exhibits in support of his declaration, the court "is not required to scour the record looking for factual disputes," nor is it "required to scour the party's various submissions to piece together appropriate arguments." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).

10

went to Micklevitz's apartment in connection with a misdemeanor want and that when he opened the door, Zaworski could smell marijuana. In light of Micklevitz's refusal to open his door, Zaworski and Chapman assert that they feared he would either try to escape or destroy the marijuana that they had smelled coming from his apartment. Given these circumstances, no jury could reasonably conclude that Zaworski and Chapman's decision to enter Micklevitz's apartment without a warrant in order to arrest him was unreasonable.

With regard to the second entry, Judge Stark found that, to ensure the officers' safety and to protect whatever evidence might be inside, it was constitutionally permissible for Zaworski to enter the apartment to ensure no one else was inside. (ECF No. 43-3 at 8-12.) The reasonableness of Zaworski's second entry into Micklevitz's apartment was fully litigated before Judge Stark. She denied a motion for reconsideration and her decision was affirmed by the Court of Appeals. (ECF No. 43-6.) Micklevitz obviously disagrees with those decisions, but that is not a sufficient basis for relitigating this issue. Given that Micklevitz has already had ample opportunity to litigate the constitutionality of Zaworski's second entry into his apartment, I find that issue preclusion bars any claim based on this entry.

Finally, with regard to Zaworski's third entry into Micklevitz's apartment, during which he got Micklevitz a glass of water (ECF No. 43-3 at 8), I find that no jury could reasonably conclude that this entry was objectively unreasonable. While the Fourth Amendment generally prohibits warrantless entry into a person's home, the prohibition does not apply in situations where voluntary consent has been

11

obtained. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). To satisfy the Fourth Amendment, officers need only have a reasonable belief that they have consent to enter. *See id.* at 185-88.

At the suppression hearing, Zaworski testified that he asked Micklevitz, who had recently been sprayed by OC spray, if he would like some water, and Micklevitz said yes. (ECF No. 43-3 at 8.) Zaworski then entered Micklevitz's apartment to get him water. He did not conduct any type of search and did not see any other contraband during this entry. While Micklevitz did not specifically tell Zaworski that he could or should enter his apartment to get the water, Zaworski's inference that he had Micklevitz's consent to do so was reasonable. Micklevitz provides no evidence suggesting that he told Zaworski *not* to enter his apartment to get the water, nor does he provide evidence suggesting that other sources of water were available to Zaworski such that Micklevitz did not know Zaworski would go into his apartment to get the water. I find that no jury could reasonably conclude that Zaworski's third entry into Micklevitz's apartment was unreasonable. Zaworski is entitled to summary judgment on this claim.

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (ECF No. 38) is **GRANTED** and this case is **DISMISSED**.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely

12

requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 5th day of April, 2021.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge